IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

```
BRUCE MILLER,                        )
                                     )
              Plaintiff,             )    Civil No. 08-6370-HO
                                     )
                                     )
              v.                     )         ORDER
                                     )
DESCHUTES VALLEY WATER DISTRICT ,    )
and GARY LYTLE,                      )
                                     )
              Defendants.            )
_____)
```

Plaintiff, Bruce Miller, brings this action against defendants Deschutes Valley Water District and Gary Lytle.

Bruce Miller began working for the Deschutes Valley Water District in 1983 and began work at the Opal Springs hydroelectric power plant in 1984.  Gary Lytle supervised Miller the entire time Miller worked at the Opal Springs power plant.

On August 17, 2006, Lytle committed a safety violation by energizing the hydraulic power unit (HPU) without notifying employees

causing the intake gates to open with employees inside. Miller complained to Earl Craig, a member of the safety committee and shop steward. Earl Craig notified his lead worker Craig Barry.

On August 28, 2006, Miller started a meeting to address safety concerns regarding Lytle's actions. Lytle apologized and a lock-out/tag-out safety system was discussed.

On or about September 14, 2006, Lytle started the plant without properly conducting safety checks. Miller spoke to Lytle about it and the conversation became heated. Miller told Lytle he wanted the policies corrected and that Lytle needed to stop running the machines. Miller complained to Earl Craig and a union representative.

On September 25, 2006, personnel at Opal Springs held another meeting regarding safety issues. Lytle stated that he was "modifying my actions on this job site so that I don't have to listen to a guy blow up at me over nothing." Deposition of Gary Lytle at p. 105 (attached to declaration of Counsel (#39) at Ex. 7, p. 25 (#46)). Lytle said he would "just take my hands off the equipment. There. End of problem." Id. At this time, Lytle also informed the employees that all other rules in addition to safety rules were going to be strictly followed. Bonn Kula, a hydro operator for the District, testified, when asked if the stricter expectations regarding rules were because of Miller, that Lytle told him that for

Kula it would be business as usual.  Deposition of Bonn Kula at p. 48 (attached to declaration of Counsel (#39) at Ex. 6, p. 10 (#45)).

On September 27, 2006, Miller complained to general manager Ed Pugh about the August 17th incident and the retaliation he felt he was suffering.  Only Miller complained to Pugh about Lytle's conduct. Pugh relayed the comments to Lytle.

After Lytle met with Pugh, Lytle issued a verbal reprimand to Miller for being in the break room when he wasn't supposed to be. Lytle states that he did not see the reprimand as significant "because it was such a tiny little thing for the abuse that he gave me."  Deposition of Gary Lytle at p. 112 (attached to declaration of Counsel (#39) at Ex. 7, p. 26 (#46)).  Lytle also reprimanded Miller for leaving the job site.

On September 28, 2006, Miller told Lytle that he told Pugh that he felt Lytle was harassing him.  Lytle decided to change Miller's schedule and give his shift to Bonn Kula.  Lytle did this because "Bonn [was his] choice to take the reins at the power plant and I wanted to spend time with him."  Deposition of Gary Lytle at p. 118 (attached to declaration of Counsel (#39) at Ex. 7, p. 28 (#46)).

Pugh met with Miller's co-workers on October 9, 2006 to investigate safety protocols.

On October 11, 2006, Miller raised safety concerns with Portland General Electric board member Bob Vigil.  Vigil investigated Miller's

concerns including contacting Lytle.  Vigil informed Miller that he thought Lytle was trying to get rid of Miller.

Earl Craig noticed a change in the way Lytle interacted with Miller after the safety complaints.  Earl Craig also remembers that Lytle told him that Miller's foreman duties were being taken away. Bonn Kula also remembers Lytle telling him that he was taking Miller's foreman duties away.  Miller's phone, charging and ordering privileges were revoked.  Only Miller was prohibited from answering the phone.

On November 2, 2006, a grievance meeting regarding the September safety issue was held.  Miller stated he was taking medication for workplace stress and was then placed on administrative leave and told to provide a packet from his doctor.  Miller's doctor was on vacation and Pugh directed Miller to see a different doctor, on short notice, or he could be terminated.

On December 1, 2006, Miller complained that the administrative leave and requirement to see a different doctor created undue hardship.  Miller believes there were other employees for the District who were on medication who were not subject to the same treatment.  The next day, Miller informed Vigil that he contacted BOLI concerning his treatment.

In December of 2006, Miller informed Lytle he was going to contact OSHA about another safety violation.  Miller states that co-workers told him that he was being "hunted" by Lytle.  Lytle states

that after December 1, 2006, he was unaware of any safety complaints made by Miller.

Plaintiff received a poor evaluation in February of 2007. Sometime just prior to July 25, 2007, a note was placed on the tool check out list specifically directing Miller to check with Lytle before checking out tools.  On July 25, 2007, Miller talked to Lytle about the note, about a comment from another employee that plaintiff was nothing at the plant and about why his vacation day had not been approved.  An argument ensued and Miller commented that Lytle had created a hostile work environment for him.  Miller stated he was going to file a grievance as he was leaving and Lytle followed him out the door and told Miller he was fired.

In response to the question of whether Lytle conducted an investigation before terminating Miller, Lytle stated:

> I've been talking about all that .... It's all part of the
> process.  Everything you've been asking me is part of that
> process.  But the actual termination was comments that he
> was making to me at the moment of termination.

Deposition of Gary Lytle at p. 80 (attached to declaration of Counsel (#39) at Ex. 7, p. 18 (#46)).

Following an arbitration hearing in 2008, Miller was reinstated with back pay.  Miller returned in June of 2008 and continues to work for the District.

In this action, Miller alleges violation of state whistleblowing laws, violation of state and federal age discrimination laws, violation of due process rights, violation of equal protection

rights, violation of freedom of speech rights, intentional and reckless infliction of emotional distress, and wrongful discharge. In addition, Miller alleges defendants aided and abetted in the discriminatory violations. Defendants move for summary judgment as to all claims.

## A.   Whistleblower Discrimination

Miller alleges whistleblower discrimination under ORS § 659A.203. It is an unlawful employment practice for any public employer to take or threaten to take disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of a violation of state or federal law or a substantial and specific danger to public health and safety. ORS § 659A.203 (1)(b)(A-B). The statute also prohibits interfering with disclosures.

Defendants argue that there is no causal link between any adverse employment actions and Miller's complaints regarding safety. However, a trier of fact could conclude that, although there is a substantial period of time between the initiation of safety complaints and Lytle's decision to terminate, Lytle took progressive moves of disciplinary action and other adverse employment actions immediately after the initial complaint and such adverse employment actions were related to the complaints. The termination is not the only adverse employment action alleged. Lytle took away job duties

and privileges well before he terminated Miller. Lytle also sought to strictly enforce other rules against Miller immediately following the complaints leading to discipline where such conduct had not merited discipline previously. In addition, a trier of fact could reasonably conclude that, although Lytle stated he made the decision to terminate based on comments made at the time, the events of the past months starting with the September 2006 complaint ultimately motivated him to terminate Miller. Lytle did state "it was all part of the process." A trier of fact certainly can infer Lytle's opposition to the complaints based on Lytle's actions and comments. The motion for summary judgment as to Miller's whistleblower claim is denied.

Defendants also contend that issue preclusion prevents Miller from arguing that his termination was the result of retaliation for his safety complaints based on the arbitration proceeding. While the arbitrator did find that Lytle did not have just cause to terminate Miller, he did conclude that the discharge was not an act of retaliation for safety complaints. However, this issue was not actually litigated as the only issue before the arbitrator was the just cause issue and the standard related to that issue. The ORS § 659A.203 claim was not before the arbitrator. Moreover, Miller is entitled to a jury trial on this issue under the Oregon Constitution and thus the court declines to apply issue preclusion to the whistleblower claim.

B.   ADEA Claim

Miller alleges both a disparate treatment claim and a hostile work environment claim under the Age Discrimination in employment Act (ADEA) and ORS § 659A.030.[1]

1.   Disparate Treatment

To establish a violation of the ADEA under the disparate treatment theory of liability, Miller must establish a prima facie case of discrimination: (1) that he is a member of a protected class (at least age 40); (2) that he was performing his job satisfactorily; (3) that he was discharged; and (4) that he was either replaced by substantially younger employee with equal or inferior qualifications or was discharged under circumstances otherwise giving rise to an inference of age discrimination.[2]  See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1280-81 (9th Cir. 2000).  Once Miller establishes these elements, then the burden shifts to  defendants to articulate a legitimate, non-discriminatory reason for the decision.  Once such a reason is articulated, then Miller must demonstrate that the

---

[1]The state law claims are analyzed in the same manner as the federal.  Williams v. Federal Express Corp. 211 F.Supp.2d 1257, 1261 (D.Or. 2002).

[2]Generally, an employee can satisfy the last element of the prima facie case only by providing evidence that he was replaced by a substantially younger employee with equal or inferior qualifications.  Coleman, 232 F3d at 1281.  The test for the prima facie case changes somewhat, however, where a discharge occurs in the context of a general reduction in the employer's workforce.  In this context, circumstantial evidence other than evidence concerning the identity of a replacement employee may also warrant an inference of discrimination.  Id.; Ritter v. Hughes Aircraft Co., 58 F.3d 454, 457 (9th Cir. 1995).

proffered reason is a pretext for a discriminatory motive.  Id. at 1280.  Of course the ultimate burden of proof remains on Miller to establish intentional discrimination based on age.

Defendants argue that Miller was replaced by an employee with superior qualifications.  While Miller points to various employee hires in an attempt to create issues of fact regarding an inference of age discrimination, the record can not be legitimately disputed that Michael Barry replaced Miller after Miller's termination.  In this case, Miller must show that Barry was a substantially younger employee with equal or inferior qualifications.

Michael Barry is younger than Miller.  However, Barry is a trained and certified electrician and Miller is not.  Nonetheless, Miller's job did not require certification as an electrician and Miller had 23 years experience at the plant.  It is unclear if Barry's qualifications are more than equal.  However, the record provides no reasonable inference that Lytle was motivated by age discrimination as the reason provided for the termination was insubordination.  As noted above, the termination may well have been spurred by a series of events starting with the complaints regarding safety, but Miller fails to provide sufficient evidence of pretext with respect to age discrimination.  The motion for summary judgment is granted as to the state and federal age discrimination claims based on disparate treatment.

2.   Hostile Work Environment

Miller concedes his hostile work environment claims.  The motion for summary judgment is granted as to the hostile work environment claims.

C.   Due Process

Miller asserts his procedural due process rights were violated when he was terminated in violation of 42 U.S.C. § 1983.  Defendants assert that Miller did not have a protected property right.

The Fourteenth Amendment prohibits depriving "any person of life, liberty, or property, without due process of law."  To have a "property" interest entitled to Fourteenth Amendment procedural protection "a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Board of Regents v. Roth, 408 U.S. 564, 577 (1972).

> Property interests, of course, are not created by the
> Constitution.   Rather, they are created and their
> dimensions are defined by existing rules or understandings
> that stem from an independent source such as state
> law--rules or understandings that secure certain benefits
> and that support claims of entitlement to those benefits.

Id.

Miller merely states that a tenured civil servant has a constitutionally protected property interest.  However, Miller fails to cite the statute or rule that confers upon him a property right in continued employment.  Cf. Cleveland Bd. of Educ. v. Loudermill, 470

U.S. 532, 538-39 (1985) (State statute created right to retain position during good behavior and efficient service). Oregon does have a classified civil service employee statute, ORS § 242.620, that prohibits dismissal absent cause, but Miller does not provide any evidence that he is a classified civil service employee.

Presumably Miller had certain protections guaranteed by a collective bargaining agreement given his successful grievance, but a finding that an employment action is conditioned upon "compliance with certain specified procedures" or that an "employee is merely given certain procedural rights" is insufficient to create a property interest. Bishop v. Wood, 426 U.S. 341, 345, 347 (1976). Any cause of action under a collective bargaining agreement would not grant a constitutionally protected interest because it is not an interest created by state law. Mustafa v. Clark County Sch. Dist., 157 F3d 1169, 1178 (9th Cir. 1998). Miller fails to cite any law that confers a property right in his continued employment such as the civil service statute noted above. The motion for summary judgment is granted as to the due process claim.

D.    Equal Protection

Miller also raises a section 1983 equal protection claim based on age, but concedes summary judgment as to this claim and the motion for summary judgment is granted.

E.   First Amendment

Miller asserts a First Amendment claim based on the alleged retaliation he received for his complaints regarding safety. Defendants assert that their arguments regarding the whistleblower claim demonstrate they are entitled to summary judgment on this claim.  As noted above, those arguments are not well-taken.  There are questions of fact as to whether various adverse employment actions taken by Lytle, including a change in duties and poor performance evaluations, were motivated by Miller's protected speech regarding safety violations.  The motion for summary judgment is denied as to this claim.

F.   Intentional Infliction of Emotional Distress

Miller asserts an intentional infliction of emotional distress claim.  To prevail on an intentional infliction of emotional distress claim, Miller must demonstrate that (1) defendants intended to inflict severe emotional distress, (2) defendants' acts were the cause of Miller's severe emotional distress, and (3) defendants' acts constituted an extraordinary transgression of the bounds of socially tolerable conduct.  McGanty v. Staudenraus, 321 Or. 532, 543 (1995).

The intent element of an intentional infliction of emotional distress claim is satisfied not only where the actor desires to inflict severe emotional distress, but also where he knows that such

distress is certain, or substantially certain to result from his conduct. McGanty, 321 Or. at 550.

The Oregon Supreme Court has noted that the duty to refrain from abusive behavior in the employment relationship comes close to that of the physician toward a patient. Hall v. The May Department Stores Co., 292 Or. 131, 138 (1981). Thus, the employment relationship may impose a more demanding obligation to refrain from inflicting mental and emotional distress. See id. The consideration of the relationship between the alleged tortfeasor and the alleged victim is relevant to the inquiry regarding the conduct element. See Rockhill v. Pollard, 259 Or. 54, 63 (1971).

It is for the trial court to determine, in the first instance, whether a defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. If the minds of reasonable men would not differ on the subject, the court is obliged to grant summary judgment. Pakos v. Clark, 253 Or. 113, 132 (1969).

Various factors bear upon the offensiveness of the conduct, including whether a special relationship exists between the defendant and the plaintiff, such as that of physician-patient, counselor-client, or common carrier-passenger. Williams v. Tri-County Metropolitan Transportation District of Oregon, 153 Or.App. 686, 689-90 (1998); Erickson v. Christenson, 99 Or.App. 104, 107, rev dismissed 311 Or. 266 (1991). Other factors include whether the conduct was undertaken for an ulterior purpose or to take

advantage of an unusually vulnerable individual. <u>See</u> <u>Checkley v.</u>
<u>Boyd</u>, 170 Or.App. 721 (2000).  The setting in which the allegedly
outrageous conduct occurs--for example, in a public venue or within
the employment context--also can bear on the degree of offensiveness
of the conduct. <u>See, e.g.</u>, <u>Hall</u>, 292 Or. at 137; <u>Trout v. Umatilla</u>
<u>Co. School Dist.</u>, 77 Or.App. 95, 102 (1985).

The mere fact that an employer overworks employees, makes
unreasonable demands upon them, and is otherwise less than a model
employer does not by itself constitute an extraordinary transgression
of the bounds of socially tolerable conduct under Oregon law. <u>Cf</u>
<u>Madani v. Kendall Ford Co.</u>, 312 Or 198, 203-06 (1991) (terminating
employee for refusing to pull down his pants); <u>Patton v. J.C. Penney</u>
<u>Co.</u>, 301 Or 117, 124 (1986) (employee terminated because he refused
to stop dating co-worker); <u>Watte v. Edgar Maeyens, Jr., M.D., P.C.</u>,
112 Or.App. 234, 237 (1992) (employer threw a tantrum, screamed and
yelled at his employees, accused them of being liars and saboteurs,
then fired them all); <u>Snyder v. Sunshine Dairy</u>, 87 Or.App. 215, 218
(1987) (inconsistent and excessive supervision, <u>unjustified</u>
<u>reprimands</u>, threats of termination, requiring the employee to perform
menial tasks). <u>See also</u> <u>Wells v. Thomas</u>, 569 F.Supp 426, 433 (EDPa
1983) (placing plaintiff in newly created position without
responsibilities, taking away her private office, reassigning her
secretary, allowing her phone calls to go unanswered, giving her poor
performance evaluations for the first time in 25 years, and

terminating her); <u>Beidler v. W.R. Grace, Inc.</u>, 461 F.SUPP 1013 (EDPa 1978), aff'd 609 F.2d 500 (3rd Cir. 1979) (plaintiff excluded from meetings necessary to perform his job, found papers constantly rearranged on his desk to annoy him, informed he would be given a new assistant without consultation, learned from rumors that his job was in jeopardy, and evaded by his superior who intimated that the new assistant would be replacing him).

The conduct that Miller allegedly suffered is not sufficiently egregious.  The motion for summary judgment is granted as to the intentional infliction of emotional distress claim.


G.   Reckless Infliction of Emotional Distress

Miller concedes his reckless infliction of emotional distress claim and the motion for summary judgment is granted as to this claim.


H.   Wrongful Discharge

Miller asserts a wrongful discharge claim based on his termination allegedly in retaliation for safety complaints.  To allege a claim of wrongful discharge there must be a discharge, and that discharge must be wrongful.  <u>Moustachetti v. State of Oregon</u>, 319 Or. 319, 325 (1994).  As noted above, although there was a time gap between the complaints regarding safety and the termination, a trier of fact could conclude that the termination was set in motion

through a series of events related to the complaints.  The motion for summary judgment is denied as to this claim.

I.  <u>Aiding and Abetting</u>

Miller asserts a claim based on ORS § 659A.030(g).  Under that statute, it is an unlawful employment practice "[f]or any person, whether an employer or an employee, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so."  The only two defendants are Lytle and the District, but Miller asserts there are a number of employees of the District who aided and abetted the conduct complained of and specifically that Pugh had some input into the decision to terminate. There is no need for the claim as the District is the proper defendant for the conduct of its employees.  <u>See</u> ORS § 30.265(1). Miller may pursue his state law claims against the District for the actions of its employees and the aider and abettor claim serves no purpose under the circumstances of this case.  The motion for summary judgment is granted as to this claim.

In addition, the state law claim against Lytle is dismissed under ORS § 30.265(1).

<u>CONCLUSION</u>

For the reasons stated above, defendants' motion for summary judgement (#28) is granted in part and denied in part.

DATED this __1st__ day of October, 2009.


                          __ s/ Michael R. Hogan _____
                          United States District Judge

17 - ORDER